Filed 2/10/14  P. v. Aguirre CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>CARLOS AGUIRRE,<br><br>　　　　Defendant and Appellant. | B244499<br><br>(Los Angeles County<br>Super. Ct. No. NA080567) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Judith Levey Meyer, Judge.  Affirmed.

Waldemar D. Halka, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

_____

We vacated the judgment originally entered following Carlos Aguirre's conviction by a jury on multiple counts of forcible sexual abuse against three underage girls on the ground the trial court improperly denied him the right to retain private counsel for posttrial proceedings. (See *People v. Aguirre* (Nov. 29, 2011, B227025) [nonpub. opn.] (*Aguirre I*).) Aguirre now appeals from the judgment entered after the trial court denied his motion for a new trial and sentenced him to a state prison term of 79 years to life. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying Aguirre's convictions are set forth in *Aguirre I.* Aguirre was convicted on four counts of forcible rape (Pen. Code, § 261, subd. (a)(2))[1] (counts 1-3 and 12), three counts of rape by use of drugs (§ 261, subd. (a)(3)) (counts 4, 5 and 8), three counts of rape of an unconscious person (§ 261, subd. (a)(4)) (counts 9-11), one count of possession for sale of ecstasy (Health & Saf. Code, § 11378) (count 6) and one count of possession of child pornography (§ 311.11, subd. (a)) (count 7). On each of the four forcible rape counts, the jury found true the special allegation Aguirre had committed felony sexual offenses against multiple victims (§ 667.61, subd. (b)).[2]

---

[1]   Statutory references are to the Penal Code unless otherwise indicated.

[2]   Our previous opinion misstated the charges. The original information, filed November 10, 2009, contained seven felony counts, including four counts of forcible rape identifying Stephanie M. and Kimberly O. as the victims and one count of rape by use of drugs involving victim Rachel P., one count of possession of ecstasy for sale and one count of possession of child pornography. On January 12, 2010 the information was amended to add a section 667.61, subdivision (b), allegation as to the four forcible rape counts. On June 25, 2010 the operative information was amended by interlineation to change count 4 to rape of Kimberly by use of drugs (§ 261, subd. (a)(3)), rather than the originally alleged forcible rape (§ 261, subd. (a)(2)), and to add count 8 alleging a second charge of rape of Kimberly by use of drugs (Kimberly had been moved to a new room where the attack resumed). On July 6, 2010 the information was again amended by interlineation to add three counts of rape of an unconscious person (one involving Kimberly and two involving Rachel). On July 7, 2010 the information was amended to add a forcible rape count involving Kimberly. After the close of evidence later that day, before instructing the jury, the court allowed the People to file a second amended complaint setting forth 12 counts, as described above, and alleging as to counts 1-3 and 12 that Aguirre had been convicted in the present case of raping more than one victim

2

Sentencing was set for August 24, 2010. On August 17, 2010 Aguirre's newly retained counsel, Leonard Levine, appeared and moved to substitute in as Aguirre's counsel for purposes of posttrial matters. The court denied the motion. On August 24, 2010 Levine again appeared and moved for reconsideration of the motion to substitute in as Aguirre's counsel. The court summarily denied the motion and sentenced Aguirre to an aggregate state prison term of 96 years to life.

Aguirre appealed from the judgment, contending the trial court violated his right to represent himself (see *Faretta v. California* (1975) 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562] (*Faretta*)), unlawfully rejected a proposed plea agreement offering him a fixed term of 19 years and violated his Sixth Amendment right to substitute retained counsel to represent him in posttrial proceedings. On November 29, 2011 we issued an opinion rejecting Aguirre's *Faretta* claim and finding the court did not abuse its discretion in terminating plea negotiations and moving the case to trial but concluding the court had improperly denied his right to counsel. We vacated Aguirre's sentence and remanded the case for renewed posttrial proceedings, including sentencing.

Represented by new counsel on remand, Aguirre filed a motion for a new trial and a new sentencing memorandum. On August 3, 2012 the trial court denied the motion and sentenced Aguirre to an aggregate state prison term of 79 years to life, calculated as four consecutive indeterminate terms of 15 years to life (60 years to life) on counts 1, 2, 3 and 12, pursuant to sections 667.61, subdivision (b) (the "one strike" law), and 667.6, subdivision (d); the determinate upper term of three years on count 7 to be served prior to service of the indeterminate life terms; the upper term of eight years on count 8, to run consecutively to count 7; the upper term of eight years on count 5, to run consecutively to count 7; a concurrent middle term of two years on count 6; and the upper terms of eight years each on counts 4, 9, 10 and 11, all stayed pursuant to section 654.

within the meaning of section 667.61, subdivision (b). Aguirre was not arraigned on any of the charges and allegations added after the original information was filed until the court arraigned him on the second amended information on July 7, 2010.

3

**CONTENTIONS**

In this second appeal Aguirre contends we should reverse his convictions and remand for a new trial because he received ineffective assistance of counsel at the plea and trial stage, issues he raised in his motion for new trial on remand. Alternatively, he contends we should again vacate his sentence and remand for renewed posttrial proceedings because the trial court refused to consider his claim of ineffective assistance of counsel at the plea stage, rejected his claim of ineffective assistance of counsel at trial and arbitrarily limited that claim to the existing trial record. Aguirre also claims counts 8, 10, 11 and 12 and the one strike allegation should be reversed because his trial counsel failed to make the proper objections to the People's belated filing of the second amended information.

In addition, Aguirre contends he is entitled to a new sentencing hearing because the trial court improperly relied on the original judge's void sentencing order in sentencing him and failed to order a new probation report. He also contends that the verdicts did not support two of the four one strike terms and that the sentence imposing four consecutive one strike sentences was unauthorized, violated principles of double jeopardy and constitutes cruel and unusual punishment.

**DISCUSSION**

1. *Aguirre's Ineffective Assistance of Counsel Claims Are Not Cognizable in This Appeal*

"'To establish ineffective assistance of counsel under either the federal or state guarantee, a defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and that counsel's deficient performance was prejudicial, i.e., that a reasonable probability exists that, but for counsel's failings, the result would have been more favorable to the defendant.'" (*In re Roberts* (2003) 29 Cal.4th 726, 744-745; see *Strickland v. Washington* (1984) 466 U.S. 668, 694 [104 S.Ct. 2052, 80 L.Ed.2d 674].) "'The burden of sustaining a charge of inadequate or ineffective representation is upon the defendant. The proof . . .

4

must be a demonstrable reality and not a speculative matter.'" (*People v. Karis* (1988) 46 Cal.3d 612, 656.)

"'"Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"' [Citations.] '[W]e accord great deference to counsel's tactical decisions' [citation] and we have explained that "courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight."' [Citation.] 'Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts.' [Citation.] [¶] In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions." (*People v. Jones* (2003) 29 Cal.4th 1229, 1254.)

On direct appeal a conviction will be reversed for ineffective assistance of counsel only when the record demonstrates there could have been no rational tactical purpose for counsel's challenged act or omission. (*People v. Lucas* (1995) 12 Cal.4th 415, 442; see *People v. Carter* (2003) 30 Cal.4th 1166, 1211 ["If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation. [Citation.] Otherwise, the claim is more appropriately raised in a petition for writ of habeas corpus."].)

In his new trial motion Aguirre contended his trial counsel's representation was defective in numerous ways. Initially, Aguirre argues the trial court on remand improperly limited review of his claims; in response, the People assert Aguirre waived those contentions. These arguments are beside the point; none of the alleged defects in trial counsel's representation meets the standard for finding ineffective assistance of counsel on direct appeal because Aguirre has failed to show "there could be no conceivable reason for counsel's acts or omissions." (*People v. Jones, supra*, 29 Cal.4th

5

at p. 1254.) For instance, the record relating to plea negotiations, including the transcript of the *Marsden* hearing, reflects Aguirre's ambivalence about pleading guilty and concerted efforts by his counsel and the court to address his concerns. Aguirre complained he had not been fully advised of the consequences of the plea, but whether his counsel's advice in private fell short of constitutional requirements is not evident on the record. Similarly, many of the alleged failures of his counsel at trial (failing to object to evidence or request appropriate limiting instructions) are typically issues of trial tactics. We cannot conclude on this record that his counsel's performance was constitutionally deficient.

More troubling is the "disorganized" (to use the new judge's description) manner in which the information was interlineated during trial and formally amended only after the close of testimony before the jury was instructed on the charges.[3] Aguirre was not arraigned on the one strike allegations contained in the first amended information or the counts added at trial until the filing of the second amended information. Although belated amendment of the pleadings is permitted,[4] it is not clear why there was such a delay here. Aguirre challenges the failure of his counsel to object to this procedure under

---

[3]  Due process requires "an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." (*People v. Jones* (1990) 51 Cal.3d 294, 317; accord, *People v. Seaton* (2001) 26 Cal.4th 598, 640-641; *People v. Graff* (2009) 170 Cal.App.4th 345, 360.) In addition, "[a] defendant has a due process right to fair notice of the allegations that will be invoked to increase the punishment for his or her crimes." (*People v. Houston* (2012) 54 Cal.4th 1186, 1227, citing *People v. Mancebo* (2002) 27 Cal.4th 735, 747.)

[4]  The court may allow amendment of the accusatory pleading to correct or make more specific the factual allegations of the offense charged at any stage of the proceeding, up to and including the close of trial, if there would be no prejudice to the defendant. (§ 1009; *People v. Graff, supra,* 170 Cal.App.4th at p. 361.) An information may not be amended, however, "to charge an offense not shown by the evidence taken at the preliminary examination." (§ 1009; accord, *Graff,* at p. 362.) "[E]ven where the prosecution complies with the necessary procedures and no specific prejudice is shown, appellate courts are compelled to reverse convictions where substantial evidence was presented at trial that did not correspond to the charges established at the preliminary hearing." (*Graff,* at p. 362.)

6

section 1009, but his counsel's silence may signify his client was well-versed on the charges and the likely sentence to result from conviction and could show no prejudice notwithstanding the tardy amendment. In any event, there is no indication Aguirre was not fully advised of the charges against him or the sentencing schemes implicated by those charges. This contention, too, is not ripe for determination on direct appeal.

2. *The Sentence on Remand Was Properly Imposed*

a. *The court properly exercised its discretion on remand*

Aguirre contends the trial court improperly considered and adopted the constitutionally void sentencing choices of the original judge for several of the offenses and failed to exercise its own discretion. Aguirre's characterization of the court's approach to sentencing him is inaccurate. The court began the hearing by noting it had reviewed the entire record in order to rule on the pending motion for a new trial and to sentence Aguirre. Acknowledging the difficulty presented by the overlapping sexual offense statutes, including the one strike law, the court stated it had found several errors in the previous sentencing order. It then imposed entirely different sentences on the forcible rape convictions (counts 1-3 and 12) (consecutive 15-year-to-life terms), which totaled 60 of the 79 years imposed.

The gist of Aguirre's complaint is that the court, having reviewed the entire record, agreed with the original trial judge and imposed the upper term on all but the ecstasy count.[5] This was hardly improper. The evidence against Aguirre was substantial and profoundly disturbing. Two judges concluded the evidence warranted imposition of the upper terms on the counts of rape of an unconscious person and rape by use of drugs. Indeed, Aguirre does not challenge the selection of the upper term on those counts; he argues only that the court was precluded from considering the previous judge's

---

[5] The court also concluded the previous judge had erred in failing to stay punishment on counts 4 and 8 and stayed the sentence on those counts pursuant to section 654.

7

assessment.  He cites no relevant authority for this proposition,[6] and we reject it.  To the extent sentencing was imposed pursuant to the discretionary sentencing law, the court was plainly entitled to consider the views of the original judge who heard the case.[7]

        b.   *The failure to request a new probation report does not invalidate the sentence imposed*

California Rules of Court, rule 4.411(c) provides:  "The court must order a supplemental probation officer's report in preparation for sentencing proceedings that occur a significant period of time after the original report was prepared."  A "significant period of time" is not defined in rule 4.411(c); however, the Advisory Committee Comment to rule 4.411(c) explains, "Subdivision (c) is based on case law that generally requires a supplemental report if the defendant is to be resentenced a significant time after the original sentencing, as, for example, after a remand by an appellate court, or after the apprehension of a defendant who failed to appear at sentencing.  The rule is not intended to expand on the requirements of those cases. . . ."

One of the few courts to vacate a sentence and remand based on the failure of the court to order a supplemental probation report, *People v. Dobbins* (2005)

---

[6]    The cases Aguirre relies on are inapposite.  In *Loper v. Beto* (1972) 405 U.S. 473 [92 S.Ct. 1014, 31 L.Ed.2d 374], for instance, the Supreme Court vacated a conviction obtained when the prosecutor introduced evidence for impeachment purposes of the defendant's prior convictions obtained in violation of his right to counsel.  (*Id*. at p. 483.)  Similarly, in *People v. Mora* (1953) 120 Cal.App.2d 896, disapproved on another ground by *People v. Van Eyk* (1961) 56 Cal.2d 471, 477, the court reversed a judgment obtained based in part on testimonial statements made by the accused under cross-examination at a preliminary hearing because he had been denied his constitutional right to counsel.  (*Mora*, at p. 899.)  Aguirre's convictions in this case were not obtained in violation of his right to counsel.

[7]    Section 1170, subdivision (b), provides:  "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court. . . .  In determining the appropriate term, the court may consider the record in the case, the probation officer's report, other reports, . . . and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, . . . and any further evidence introduced at the sentencing hearing.  The court shall select the term which, in the court's discretion, best serves the interests of justice. . . ."

127 Cal.App.4th 176, distinguished this requirement for cases in which probation is not among the authorized sentencing options: "Preliminarily, we note that case law has recognized that a probation report is not necessarily required if defendant is statutorily ineligible for probation, for example, because of a prior strike. [Citations.] This is consistent with section 1203, subdivision (b)(1), which provides in pertinent part that the trial court shall order a probation report 'before judgment is pronounced' for persons 'convicted of a felony' who are 'eligible for probation.'" (*Dobbins,* at p. 180; see also *People v. Tatlis* (1991) 230 Cal.App.3d 1266, 1272-1273 ["[t]here is no statutory requirement that a sentencing court procure a probation report embodying facts pertaining to sentencing except when a person convicted of a felony is eligible for probation"].)

The most recent report prepared for Aguirre was completed in January 2009—more than a year before he was tried—and filed at the time of the original sentencing hearing in August 2010. He was resentenced in August 2012. The three and one-half years that had elapsed was unquestionably a significant period of time within the meaning of rule 4.411(c). However, Aguirre was statutorily ineligible for probation, and, in light of the four mandatory, consecutive 15-year-to-life terms imposed by the court under the one strike law and section 667.6, subdivision (d), it is difficult to imagine how he was harmed by the absence of the report. Moreover, Aguirre failed to request a supplemental probation report before his resentencing and on appeal fails to identify any favorable information that might have affected the opinion of the judge if a supplemental report had been prepared. The existence of any such information is doubtful at best because Aguirre remained in custody throughout this period "under the watchful eyes of custodial authorities." (*People v. Dobbins, supra,* 127 Cal.App.4th at p. 181.) Thus, even if he was entitled to a supplemental probation report, the error was harmless because it is not reasonably probable he would have obtained a more favorable result had the

9

report been prepared. (*Id.* at p. 182; see *People v. Watson* (1956) 46 Cal.2d 818, 834-836.)[8]

      c. *The trial court correctly imposed consecutive 15-year-to-life sentences on counts 1, 2, 3 and 12*

Section 667.61, provides that a defendant who is convicted of one of the enumerated sex offenses, including forcible rape (§ 261, subd. (a)(2)), shall be punished by indeterminate terms of 15 years to life if the jury also finds that the defendant has been convicted in the present case of such offenses against more than one victim (§ 667.61, subds. (b), (c) & (i)). Section 667.6, subdivision (d), provides that full and separate consecutive terms shall be imposed for forcible rape if the crimes involved separate victims or the same victim on separate occasions. (§ 667.6, subds. (d) & (e).)

On remand the court cited both provisions as mandating consecutive sentences on counts 1-3 (forcible rape of Stephanie M. on three occasions) and 12 (forcible rape of Kimberly O.). Aguirre does not contest the court's reading of the statutes but argues the jury verdicts,[9] read in conjunction with the statements of the prosecutor in closing argument,[10] improperly allowed the jury to find the one strike allegation true on all four counts if it convicted Aguirre of counts 3 and 12. According to Aguirre, "The pleading itself, as well as the prosecutor's construction of the pleading . . . told the jury . . . [the] allegation would be established if it found defendant guilty 'of count 3 and 12.' [Citation.] The jury was never told that if it found the allegation was true as to counts 3

---

[8]    We reject Aguirre's request we apply the more stringent federal standard for harmless error set forth in *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705], which requires proof of harmlessness beyond a reasonable doubt.

[9]    A separate verdict form prepared for the one strike allegation provided: "We the jury . . . find that within the meaning of Penal Code section 667.61(b) that the . . . following circumstances apply: [¶] The defendant has been convicted of raping more than one victim with respect to Count 1 or 2 or 3 and 12 to be true."

[10]    The prosecutor stated: "You will also have an allegation that you will be asked to find true or not true. The allegation applies to counts 1, 2, 3 and 12. So if you find that he's guilty of [counts] 3 and 12, you would be finding the allegation true that there are multiple victims in the rape, what we call forcible rape."

10

and 12 that it would then have to determine whether the allegation was true as to counts 1 and 12 and/or counts 2 and 12 . . . ." (See *People v. Paul* (1998) 18 Cal.4th 698, 706-707 [verdict must be read in light of charging instrument, defendant's plea, jury instructions, prosecutor's argument and jury's intention as reflected by verdict].) Citing *People v. Mancebo* (2002) 27 Cal.4th 735 (*Mancebo*) for the proposition that section 667.61 allegations represent "a discretionary charging decision" (*Mancebo,* at p. 749), Aguirre contends the jury could only have understood the prosecutor to seek a one strike finding on counts 3 and 12.

Neither the jury verdicts nor the prosecutor's comment supports Aguirre's contention, and *Mancebo* is inapposite. Like Aguirre, Mancebo was charged with various sex crimes against multiple victims, and the information alleged one strike circumstances. As to one victim the information alleged the use of a firearm and kidnapping; as to the other, it alleged use of a firearm and tying or binding the victim. The information also alleged personal use of a firearm under section 12022.5, subdivision (a). The jury found all allegations to be true. At the sentencing hearing, because the court recognized it could not impose a firearm-use enhancement under section 12022.5 and also use the finding to impose one strike sentences, it substituted an unpleaded "multiple victim circumstance" to support sentencing under the one strike law. (*Mancebo, supra,* 27 Cal.4th at pp. 740-741.)

Ruling this to be error, the Supreme Court held that, because the multiple victim circumstance had not been specifically alleged, it could not be used to support sentencing under the one strike law. The Court rejected the People's argument that the defendant, charged and convicted of crimes against multiple victims, had "factual notice" of the multiple victim circumstance even though those facts were not alleged as a basis for supporting one strike sentencing. (*Mancebo*, *supra*, 27 Cal.4th at pp. 744-745.) The Court explained the statute required every fact and circumstance used to support a sentence under the one strike law be alleged in the accusatory pleading. Because the multiple victim circumstance allegation was not specifically alleged as a qualifying basis

11

for sentencing under the one strike law, the defendant was led to believe that circumstance would not be used to support one strike sentencing. (See *id*. at p. 746.)

*Mancebo* thus stands for the limited proposition that a defendant is entitled to notice of the specific facts that will be used to support sentencing under the one strike law: Facts alleged and proved only as part of the substantive crime charged cannot later be used to support one strike sentencing. (*Mancebo*, *supra*, 27 Cal.4th at p. 749.)

Unlike the sentence in *Mancebo*, Aguirre's one strike sentence was imposed based on a fact specifically pleaded in the information and found true by the jury, that is, Aguirre raped more than one person.[11] That fact, having been pleaded and proved, placed him within the scope of the one strike law, which mandated the court to sentence him to 15-year-to-life sentences on each count as to which the allegation had been made. (See *People v. Wutzke* (2002) 28 Cal.4th 923, 930-931 ["[P]ersons convicted of sex crimes against multiple victims within the meaning of [former] section 667.61, subdivision (e)(5)[12] 'are among the most dangerous' from a legislative standpoint. [Citation.] The One Strike scheme therefore contemplates a separate life term for each victim attacked on each separate occasion."]; see also *People v. Murphy* (2001) 25 Cal.4th 136, 153 & fn. 7, and cases cited.) There was no error.

d. *The sentence did not violate principles of double jeopardy*

Ordinarily, "[w]hen a defendant successfully appeals a criminal conviction, California's constitutional prohibition against double jeopardy precludes the imposition of more severe punishment on resentencing." (*People v. Hanson* (2000) 23 Cal.4th 355, 357, citing *People v. Henderson* (1963) 60 Cal.2d 482, 495-497; see Cal. Const., art. I, § 15.) Aguirre contends the imposition of a sentence of four consecutive 15-year-to-life

---

[11] Notwithstanding Aguirre's parsing of the verdict form or the prosecutor's comment, the jury's intent is plain. The jury was told it could find the multiple victim allegation true if it convicted Aguirre on any of the three counts involving Stephanie M. *and* the one count involving Stephanie O.

[12] The multiple victim circumstance is now found in section 667.61, subdivision (e)(4).

terms, which exceeded the three life terms imposed at his original sentencing, violated California's double jeopardy clause.

As Aguirre recognizes, however, an exception to this rule is made when the trial court has imposed an unauthorized sentence: "'Such a sentence is subject to being set aside judicially and is no bar to the imposition of a proper judgment thereafter, even though it is more severe than the original unauthorized pronouncement.'" (*People v. Hanson, supra,* 23 Cal.4th at p. 360, fn. 3.)

There is little question the original sentence pronounced by the court in this case was unauthorized in several respects. At the resentencing hearing the court began by noting the original sentence contained numerous errors, which it attributed to the difficulty posed by the three different statutory schemes implicated by sex crime sentencing. In particular, with respect to counts 1, 2 and 3, the first judge had imposed separate terms of eight years plus an enhancement of 15 years to life under the one strike law. The resentencing court corrected this error, observing that the one strike law is an alternative sentencing scheme and cannot simply be treated as an enhancement. (See *People v. Jones* (1997) 58 Cal.App.4th 693, 708-709.) "By operation of law," the court imposed mandatory 15-year-to-life terms on counts 1, 2, 3 and 12 under the one strike law and made those terms consecutive under section 667.6, subdivision (d).

Moreover, in addition to imposing four consecutive 15-year-to-life sentences on counts 1, 2, 3 and 12, the court stayed under section 654 several of the determinate terms imposed at the first sentencing hearing to run consecutively to the other determinate terms. As a practical result, the aggregate term imposed—79 years to life—was less than the aggregate term imposed originally—96 years to life. While not the basis for our conclusion here, for purposes of double jeopardy analysis, the question on resentencing turns on whether the aggregate sentence is greater than the original sentence. (See *People v. Hill* (1986) 185 Cal.App.3d 831, 834-835 ["When a case is remanded for resentencing by an appellate court, the trial court is entitled to consider the entire sentencing scheme. Not limited merely to striking illegal portions, the trial court may reconsider all sentencing choices. [Citations.] This rule is justified because an aggregate

13

prison term is not a series of separate independent terms, but one term made up of interdependent components. The invalidity of one component infects the entire scheme. [Citation.] . . . The trial court is entitled to rethink the entire sentence to achieve its original and presumably unchanged goal. . . . [¶] . . . [Defendant is not entitled] to . . . keep favorable aspects of the first sentence and to eliminate unfavorable aspects."]; see also *People v. Hanson, supra,* 23 Cal.4th at p. 365 ["the proper focus with respect to resentencing is whether increased punishment operates to penalize the defendant for exercising the right of appeal"]; *People v. Craig* (1998) 66 Cal.App.4th 1444, 1448 ["after successful appeal of a conviction a defendant may not upon reconviction be subjected to an aggregate sentence greater than that imposed at the first trial"]; *People v. Daniels* (2012) 208 Cal.App.4th 29, 32 ["[A]n increase in one component of a monetary sentence will not render punishment more severe if another component is reduced by an equal amount. The protection against double jeopardy requires only that the aggregate monetary sentence, not each component thereof, be equal to or less than that originally imposed."].)

> e. *The trial court lacked discretion to order concurrent terms on the one strike convictions because of section 667.6, subdivision (d)*

Section 667.61, subdivision (i), which requires courts to impose consecutive sentences for each conviction if the crimes involve separate victims or the same victim on separate occasions, became effective on September 20, 2006, after the date of three of the four counts on which Aguirre was convicted. He contends, and the People agree, that the previous version of section 667.61 did not mandate consecutive sentences on those counts. The People point out, however, that the one strike terms were made consecutive by section 667.6, subdivision (d), which mandates a "full, separate, and consecutive term" for specified sex crimes (including forcible rape) "if the crimes involve separate victims or involve the same victim on separate occasions." The application of section 667.6, subdivision (d), to one strike convictions was confirmed by the Sixth District Court of Appeal in *People v. Jackson* (1998) 66 Cal.App.4th 182, 191-194 (*Jackson*). The *Jackson* court's reasoning was adopted in the Second District in

14

*People v. Chan* (2005) 128 Cal.App.4th 408, 424. Aguirre, who urges us to reject the reasoning of *Jackson*, can point to no case that has done so since its filing in 1998; and we decline to do so here.

   3. *The Sentence Does Not Violate the Prohibition Against Cruel and Unusual Punishment*

   Aguirre, who was 19 and 20 years old at the time he committed the rapes that were charged in this case, contends his sentence was unconstitutionally excessive in light of his age. Because he failed to raise this issue in the trial court, he has forfeited this claim. (See, e.g., *People v. Williams* (1997) 16 Cal.4th 153, 250 [constitutional objections not properly raised are forfeited]; see also *People v. Russell* (2010) 187 Cal.App.4th 981, 993; *People v. Ross* (1994) 28 Cal.App.4th 1151, 1157, fn. 8 [forfeiture of claim of cruel and unusual punishment].)

   We nonetheless reject this claim on its merits. The Eighth Amendment's ban on cruel and unusual punishment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime. (*Ewing v. California* (2003) 538 U.S. 11, 20-21 [123 S.Ct. 1179, 155 L.Ed.2d 108].) In *Graham v. Florida* (2010) 560 U.S. 48 [130 S.Ct. 2011, 176 L.Ed.2d 825], the United States Supreme Court held that sentencing a juvenile to life without the possibility of parole for a nonhomicide offense violates the Eighth Amendment's prohibition of cruel and unusual punishment. (*Graham,* at p. 82.) Central to this result was the Court's appreciation for the "fundamental differences between juvenile and adult minds" and its recognition that juveniles are "more capable of change than are adults . . . ." (*Id.* at p. 68.) The Court subsequently extended the reasoning of *Graham* to hold imposition of a mandatory sentence of life-without-parole on a juvenile convicted of murder also violates the Eighth Amendment. (*Miller v. Alabama* (2012) 567 U.S. ___ [132 S.Ct. 2455, 2467-2468, 183 L.Ed.2d 407].) As the Court explained, such penalties "preclude[] consideration of [an offender's] chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences." (*Id.* at p. 2468.) The Court concluded *Graham*'s directive to consider the unique characteristics and vulnerabilities of juveniles is not "crime-specific"

15

and its "reasoning implicates any life-without-parole sentence for a juvenile . . . ." (*Id*. at p. 2458.)

Article I, section 17 of the California Constitution contains a similar prohibition of punishment "not only if it is inflicted by a cruel and unusual method, but also if it is grossly disproportionate to the offense for which it is imposed." (*People v. Dillon* (1983) 34 Cal.3d 441, 478.) To prevail on a claim a sentence constitutes cruel or unusual punishment in violation of the California Constitution, a defendant must overcome a "considerable burden" (*People v. Wingo* (1975) 14 Cal.3d 169, 174) by demonstrating the punishment is so disproportionate to the crime for which it was imposed it "shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424 (*Lynch*);[13] see *Dillon,* at p. 478.) In *People v. Caballero* (2012) 55 Cal.4th 262, 268, the California Supreme Court held a 110-year-to-life sentence imposed on a juvenile convicted of nonhomicide offenses (three gang-related attempted murders) was the functional equivalent of a life sentence without the possibility of parole and was invalid in light of the decisions in *Graham* and *Miller*. (*Caballero,* at pp. 268-269.) The Court rejected the argument a cumulative sentence for distinct crimes does not present an Eighth Amendment issue and found, when a juvenile is sentenced to minimum terms that exceed his or her life expectancy, the punishment is excessive under *Graham* and *Miller*. (*Caballero,* at pp. 268-269.) As the Court noted, "the state may not deprive [juveniles] at sentencing of a meaningful opportunity to demonstrate their rehabilitation and fitness to reenter society in the future." (*Id.* at p. 268.) A sentencing court must

---

[13]     *Lynch* identified three factors for the reviewing court to consider in assessing this constitutional claim: (1) the nature of the offense and the offender; (2) how the punishment compares with punishments for more serious crimes in the jurisdiction; and (3) how the punishment compares with the punishment for the same offense in other jurisdictions. (*Lynch, supra*, 8 Cal.3d at pp. 425-427.) "The three prongs of *Lynch* are not absolute rules establishing that a given punishment is cruel and unusual, but are merely guidelines to be used in testing the validity of a particular penalty. [Citations.] The importance of each prong depends on the specific facts of each case and application of the first prong alone may suffice in determining whether a punishment is cruel and unusual." (*In re DeBeque* (1989) 212 Cal.App.3d 241, 249.)

16

consider mitigating circumstances before determining at which point juveniles can seek parole, including their age, whether they were a direct perpetrator or an aider and abettor, and their physical and mental development. (*Ibid.*)

Discussing these cases in the context of a petition for habeas corpus filed by a prisoner who was under 18 years old at the time of the offenses for which he was convicted, our colleagues in Division Two of the Second District recently observed: "In practice, the directives of *Graham, Miller* and *Caballero* have proved challenging for trial courts. The Legislature has enacted statutes designed to ensure lengthy prison sentences for defendants who commit serious and/or violent felonies. These sentencing statutes, particularly those requiring trial courts to impose certain sentence enhancements, limit a trial court's sentencing options." (*In re Alatriste* (2013) 220 Cal.App.4th 1232, 1238 (*Alatriste*).) In *Alatriste*, the court declined to find the 77-year-to-life prison term imposed on a 16-year-old gang member unconstitutional in light of the enactment of section 3051, which requires that juvenile offenders with determinate sentences of any length shall receive a "youth offender parole hearing" during the 15th year of incarceration and those sentenced to life terms shall receive such a hearing in the 20th or 25th year of incarceration depending upon the length of the minimum term. (*Alatriste*, at pp. 1239-1240; accord, *People v. Martin* (2013) 222 Cal.App.4th 98, 105; see § 3051, subds. (a)-(b); see also § 1170, subd. (d)(2) [defendant under the age of 18 sentenced to life without possibility of parole may seek recall of sentence after serving 15 years]; but see *In re Heard* (Jan. 22, 2014, D063181) ___ Cal.App.4th ___ [2014 Cal.App. Lexis 50] [determinate term of 23 years and consecutive indeterminate term of 80 years to life imposed for crimes committed when defendant was 15 and 16 years old was cruel and unusual punishment under Eighth Amendment; § 3051 does not relieve the sentencing court of its constitutional duty to consider the differences between juveniles and adults when sentencing juvenile offenders].)

Significantly, section 3051, which was enacted to reconcile California's sentencing statutes with the decisions in *Graham, Miller* and *Caballero* (see § 3051, subd. (a); *Alatriste, supra,* 220 Cal.App.4th at pp. 1238-1239) does not apply to sentences

imposed under the one strike law or section 667.6, subdivisions (b) through (i) (§ 3051, subd. (h)), and would not have applied to Aguirre in any event because none of the conduct underlying the charges against him occurred when he was a minor. While we agree that 19-year-old offenders have likely not developed the moral culpability or behavior control of an older adult, neither the Legislature nor the courts have extended the rationale of *Graham, Miller* and *Caballero* to young adult offenders or to those convicted of qualifying sex offenses. Although there may be a case that warrants such a result, we see no basis to reach that conclusion here. Aguirre was convicted of multiple rapes, both forcible and by use of drugs, against three young girls. Although he was not charged with earlier crimes, the evidence established he had engaged in the continuous sexual abuse of Stephanie and other young girls from a young age. Nor did his conduct evolve as he aged. When he was arrested at age 22, he was found in possession of a large cache of child pornography, some of which depicted him in sexual acts with underage girls. As harsh as the virtual life sentences imposed here may be, they are fully consistent with existing constitutional guidelines.

## DISPOSITION

The judgment is affirmed.


PERLUSS, P. J.


We concur:



WOODS, J.                           SEGAL, J.[*]


---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.